**James Arthur LINDSEY, also known as James Arthur Lindsay, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18746.**

United States Court of Appeals
Ninth Circuit.

May 26, 1964.

A. Park Smoot, Salt Lake City, Utah, for appellant.

John W. Bonner, U. S. Atty., Earl Johnson, Jr., Sp. Asst. to the U. S. Atty., Las Vegas, Nev., for appellee.

Before ORR, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was tried and convicted by a jury on six counts of "committing fraud by wire"—in violation of Title 18 U.S.C. § 1343.[1] The dates and amounts referred to in each count alleged to have been transmitted by wire, are as follows:

I—September 26, 1962—$3,000 from Emlenton, Pa.
    to Las Vegas, Nevada

II—September 28, 1962—$1,525 from Tampa, Florida
    to Las Vegas, Nevada

III—October 1, 1962   —$3,000 from Emlenton, Pa.
    to Las Vegas, Nevada.

IV—October 2, 1962   —$3,500 from Emlenton, Pa.
    to Las Vegas, Nevada

V—October 8, 1962   —$1,500 from Emlenton, Pa.
    to Las Vegas, Nevada

VI—October 5, 1962   —$1,950 from Vallejo, Calif.
    to Las Vegas, Nevada

It is undisputed (1) that appellant received in the twelve day period of September 26, 1962 to October 8, 1962, more than $14,000 from the complaining witness, Mary P. Strantz, a seventy five year old retired school teacher; (2) that it was appellant's idea that the transaction between Mrs. Strantz and appel-

---

1. 18 U.S.C. § 1343 reads as follows:

"§ 1343. *Fraud by wire, radio, or television*

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

lant was to be kept secret "so as not to emotionally disturb" Mrs. Jo Ann Wyse; (3) that appellant represented to Mrs. Strantz among other things that he proposed to use this money (a) to pay bills of Mrs. Jo Ann Wyse (Mrs. Strantz' niece with whom appellant had been living), (b) to reimburse himself for some $11,000 in bills of Mrs. Wyse's he had allegedly paid, (c) to make certain repairs and improvements on a bowling alley appellant allegedly owned in Cincinnati, Ohio, which allegedly was also "in escrow" to be sold—one-half of the proceeds thereof to be paid to appellant, (d) to make a payment due on Mrs. Wyse's house and thus "save it."

All of appellant's representations were admittedly false. He appeals, urging as error:

(I) The action should have been dismissed because there was no proof the complaining witness *relied* on appellant's false representations.

(II) There was no jurisdiction because no evidence the appellant used or caused to be used any interstate facilities.

(III) There was error in permitting a tape recording of a telephone conversation between appellant and Mrs. Strantz in evidence.

(IV) There was error committed by the United States Attorney in argument in his reading from a document not in evidence.

(V) There was error in inflicting a cruel and unusual punishment on appellant, i. e., six five-year consecutive sentences, or a total of thirty years.

I

■ We agree with the government's position that if the proof is sufficient to show that appellant devised, *as a part of his scheme to defraud Mrs. Strantz,* that she should through his misrepresentations be induced to have money sent to Las Vegas by wire for his use, then the crime is complete. Whether Mrs. Strantz was so induced is beside the point. The appellant sought to induce her to so act through his fraudulent representations; she acted; the money was sent.

There is no requirement (for a conviction under 18 U.S.C. § 1343) that the victim be actually deceived, but only that there be a scheme to defraud and as a step in the scheme's execution, a transmittal of money in interstate commerce by means of a communication by wire. Huff v. United States, 5 Cir.1962, 301 F.2d 760 at 765, cert. den. 371 U.S. 922, 83 S.Ct. 289, 9 L.Ed.2d 230.

Even if the money was sent under such circumstances, and never reached appellant, the crime would have been complete. Huff v. United States, supra. Cf. also, Lemon v. United States, 9 Cir. 1960, 278 F.2d 369, where with respect to a somewhat similar "fraud by use of mails" statute (18 U.S.C. § 1341), we said:

"The elements necessary for a conviction under 18 U.S.C.A. § 1341 are (1) the formation of a scheme with an intent to defraud, and (2) use of mails in furtherance of that scheme. No actual misrepresentation of fact is necessary to make the crime complete." (Id. 278 F.2d at 373.)

And see: United States v. Guterma, D.C. N.Y.1959, 179 F.Supp. 420 and 181 F. Supp. 195.

Thus we need not meet the question of reliance by Mrs. Strantz on appellant's misrepresentations. We observe, however, that there is sufficient evidence in her testimony to warrant the jury's concluding she did so rely.

II

■ The second point, as we understand appellant, is that there is no jurisdiction because no proof appellant caused the money to be sent by Western Union money order—that Mrs. Strantz' bank and her brother and her nephew had so sent the money because Mrs. Strantz asked them to do so. But, of course, the jury found it was the appellant's scheme and his fraud on Mrs. Strantz that caused her to obtain such money by wire

from other states. He knew this was to be done, for he was present to receive the money. In the recorded conversation hereinafter mentioned, appellant admitted receiving the money. He had told Mrs. Strantz what to say over the long distance wire to her brother in Pennsylvania (R. 139) in order to obtain it. He personally placed a call to the Tampa, Florida bank to obtain the first payment (R. 141, 144–145, 181–186). He actually talked to Mrs. Strantz' brother by telephone urging its transmittal (R. 215). There is no merit in appellant's claimed second error that someone other than he set in motion the interstate flow of money, i. e., "caused it to be transmitted."

## III

■ Appellant's third point is alleged error in admitting a tape recording of a telephone conversation. Appellant urges this violates 47 U.S.C. § 605,[2] despite the consent of the person receiving the call to the recordation of it.

We have ruled against appellant's position previously. Rayson v. United States, 9 Cir., 1956, 238 F.2d 160. So has the United States Supreme Court. Rathbun v. United States, 1957, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134. And see our reiteration of the same principle in Wilson v. United States, 9 Cir., 1963, 316 F.2d 212; Carbo v. United States, 9 Cir., 1963, 314 F.2d 718; McClure v. United States, 9 Cir., 332 F.2d 19. Other circuits agree with our position: United States v. Williams, 7 Cir.1963, 311 F.2d 721, cert. den. 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035; Carnes v. United States, 5 Cir.1961, 295 F.2d 598, cert. den. 369 U.S. 861, 82 S.Ct. 949, 8 L.Ed.2d 19; United States v. Bookie, 7 Cir.1956, 229 F.2d 130; Flanders v. United States, 6 Cir.1955, 222 F.2d 163.

We find no violation of 47 U.S.C. § 605 in admitting the tape recording.

## IV

Appellant's fourth point is that the United States erred in reading to the jury from a document not received in evidence. Baldly so stated, one conceives that error must have existed. But we must view the reading by the United States Attorney in context. A tape recording itself was in evidence. (Ex. 14.) The transcript of the tape recording (Ex. 15 for identification), was, when offered in evidence by the government, rejected by the trial judge, because *first* it was cumulative and repetitious, *second*, that the transcript offered was only a copy and not the original transcript, and *third*, that no foundation had been laid. (Tr. p. 210.)

■ We note the only objection made by appellant's counsel (Tr. pp. 209, 210) was not that portions of the tape recording were inaudible and hence cast doubt on the authenticity of any purported transcript; nor that the transcript was inaccurate; nor even that it was a copy and not an original of the transcript. The sole objection was that its introduction would give the government "a second shot" in proving its contents; that the government in introducing the tape recording had "elected" to use it, and not the transcript, and was not entitled to have both in evidence. We have previously ruled to the contrary, once we assume the original transcript is offered, and a proper foundation laid. See: Chavira Gonzales v. United States, 9 Cir.1963, 314 F.2d 750.

■ Of course, the recording itself was the most accurate rendition of the conversation between appellant and the complaining witness. She had already testified to such conversation, so theoretically the recording itself was cumulative to her testimony. Yet that did not make the recording inadmissible. McClure v. United States, supra.

---

2. 47 U.S.C. § 605 provides, in material part:

"No person receiving * * * or transmitting, any interstate * * * communication by wire * * * not being authorized by the sender * * * shall divulge * * * the contents * * * thereof [etc.] * * *."

Cf. Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

We also note that no objection was made on behalf of the appellant at any time during the United States Attorney's argument that any reference to the transcript was improper, or inaccurate or that it differed in any way from the tape recording.

This court cannot determine from the *written* record before us whether what was read to the jury from the transcript was or was not clearly to be heard on the tape recordings. Neither can we determine if the transcript purported to "interpret" the alleged "inaudible" portions of the tape recording. Of course, if actually inaudible, the words could not be found on the tape, nor in any transcript thereof. Whether the transcript represents an attempted "interpretation" of semi-audible statements or not—whether it referred to difficult to hear portions of telephone conversations as "inaudible"—or whether inaudible, or semi-audible, but intelligible portions (if any) of the tape recordings were omitted from the transcript, we cannot know until we hear the recording, because (a) the rejected Exhibit 15 for identification is not before us, for comparison, and (b) it was the appellant, who now claims error, that objected to its introduction into evidence.

The author of this opinion therefore has had the entire recording (Ex. 14) played back, and compared it with what the transcript shows was read by the United States Attorney to the jury (Tr. pp. 409–415, inclusive).

The recording is remarkably clear and easy to hear. In but one place was it the least inaudible, that was a limited portion for a few seconds when both the appellant and Mrs. Strantz were speaking at once. There was no difficulty in determining which of the parties was speaking. Every word read to the jury was in the recording and can be plainly heard.[3]

█ Neither on his motion for new trial nor on this appeal does appellant point out any portion of the transcript which was allegedly erroneous. We have carefully compared what was read by the United States Attorney with what the jury heard from the recording, and find no enlargement, no embellishment, no interpretation. What was read can be clearly heard in the tape recording.

There was no error in referring to the transcript (and not to the recording), for unless the meaning was distorted, it was a more accurate reference to the testimony before the jury. The procedure here followed in the trial court, however, highlights the danger of counsel trying cases without making a proper and easily accessible complete record for appellate review.

## V

█ Appellant's last point is that in sentencing appellant to five years on each count to run consecutively, the trial court inflicted cruel and unusual punishment on him, violative of the Eighth Amendment to the Constitution.

What this court said in the recent case of Anthony v. United States,[4] seems apropos here:

"There is no merit to this point. The sentence was within the term prescribed by the Congress. The punishments prescribed, fine and imprisonment, are and always have been customary punishments for crime in this country, and cannot be said to be either cruel or unusual. * * * Appellant was convicted of two separate offenses which occurred on two separate occasions.

---

3. To be precise, in the transcript there appeared to be (a) one transposition of the words "in a drawer at home" to "at home in a drawer" (p. 410, l. 5); (b) one statement "until I got it straightened out" sounded like "until I got Harold straightened out", (p. 410, l. 17); (c) the omission of casual interjections, "see,"

(p. 410, l. 24); "well" (p. 411, l. 24); "you know" (p. 412, l. 13); and (d) the omissions of "then" (p. 412, l. 23) and "and" (p. 413, l. 22). None of these changed the meaning in the slightest way.

4. 9 Cir., 331 F.2d 687.

[Here six offenses on six separate occasions.] The punishment fixed for each offense was within the limit prescribed by Congress for that offense, and the court had the discretion to order the sentences to run consecutively rather than concurrently."

Cf. also: Pependrea v. United States, 9 Cir.1960, 275 F.2d 325; Brown v. United States, 9 Cir.1955, 222 F.2d 293.

The matter of the court's discretion is particularly important here, in view of the sentence imposed by the trial court (Clk's Tr. pp. 72, 73), which provided:

"The defendant shall become eligible for parole under Title 18 (U.S.C.) § 4208(a) (1) upon the serving of a five year term."

■ As represented to us without dispute at oral argument, it seems obvious the court had in mind five years imprisonment and many, many years of parole. It is likewise obvious, as government counsel states in its brief, that the trial court rightly took into consideration

"the fact Appellant is a two-time felon, the testimony of Stella Montgomery indicating that Appellant had milked that 72 year old woman of some $95,000 only a few months before inducing the 75 year old Mrs. Strantz * * * [to give him] almost $15,000, the admitted fact that Appellant had only earned $70.00 in the several months he had been in Las Vegas, living off of and with another dupe, Mrs. Wyse, in the meantime, and all the many other factors not a part of the record which would be revealed to the trial court in the confidential pre-sentence report from the Probation officer." (Appellee's Brief, p. 25.)

We find no error in the sentence, and no cruel or unusual punishment, as that term is defined in law.

There existing no error on any point urged by appellant, the judgment and sentence are affirmed.