John L. BATTAGLIA, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19513.

United States Court of Appeals Ninth Circuit.

July 12, 1965.

Rehearing Denied Aug. 6, 1965.

Burton Marks, Beverly Hills, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Benj. S. Farber, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and JAMESON, District Judge.

JERTBERG, Circuit Judge:

Following trial to a jury, appellant and his codefendant, Harold Tenner, were convicted on all six counts of an indictment charging violation of Title 18 U.S. C.A. §§ 2 and 1343.[1] Tenner did not appeal.

This court's jurisdiction over the appeal is based upon 28 U.S.C.A. §§ 1291 and 1294(1).

Count One of the indictment in substance charges that beginning on or about January 15, 1963, and continuing until on or about June 7, 1963, John L. Battaglia (hereafter appellant) and Harold Tenner devised and intended to devise a scheme and artifice to defraud and to obtain money from John Kenneth War-

1. "§ 2. Principals
"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."
"§ 1343. *Fraud by wire, radio, or television*
"Whoever, having devised or intending to devise any scheme or artifice to de-

fraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

rens (hereafter Warrens) by means of false and fraudulent pretenses, representations and promises; said scheme consisted of fraudulent representations concerning a past-posting scheme whereby Warrens would place wagers through appellant and Tenner with bookmakers in Las Vegas on horse races that had been completed; that Warrens was induced to pay over monies to appellant and Tenner by means of the false and fraudulent representations and promises which those charged well knew were false and fraudulent, and which schemes are set forth in Count One. Count One also alleges that on or about February 5, 1963, those charged, for the purpose of executing the scheme, transmitted and caused to be transmitted by means of wire, a telephone call from San Diego, California, to Las Vegas, Nevada.

Count Two realleges the allegations of Count One except the last mentioned communication by wire, and alleges that on or about March 11, 1963, those charged transmitted and caused to be transmitted by means of wire, a telephone call, from Burbank, California, to Las Vegas, Nevada.

We shall first consider appellant's contention that the evidence was insufficient to sustain convictions of appellant on Counts One and Two.

The evidence relating to Counts One and Two reflects the following: Warrens was approached by appellant in January, 1963. Appellant told him that he had certain contacts at a Las Vegas bookmaker's office and at a race track which enabled him to place bets on a horse after it had won the race, and that he needed Warrens' participation because he was without sufficient funds and was unable to place bets in his own name. Warrens agreed to participate and delivered $5,000 to appellant and was told an employee of a Las Vegas bookmaker, "Harry Mellon", would be calling to confirm the deposit. "Harry Mellon" was in reality a Las Vegas home improvement salesman named Harold Tenner. Tenner telephoned Warrens from Las Vegas, confirmed the deposit, and told Warrens he

was to call a certain telephone number in Las Vegas when he wished to place a bet. The number was that of the T & B Sales Company which was owned by Tenner. Later, after appellant had informed Warrens of the bet to place, Warrens telephoned Tenner and placed the bet. The horse lost. This procedure was repeated a second time in a similar fashion, Warrens hoping thereby to recoup his previous loss. This time he lost $14,000. At appellant's urging Warrens agreed to place still another bet and borrowed $9,-000 from a friend, Williams, for this purpose, which amount was delivered to appellant by Williams. About a week later, and on March 22, 1963, Williams learned of Warrens previous bets and believing that Warrens was being "conned", induced Warrens to make a report to the San Diego police. On the same day, Williams and Warrens proceeded to the San Diego police station where they identified pictures of appellant, and Warrens told police officers that he had an appointment arranged for that afternoon with appellant at appellant's motel. The police officers equipped Warrens with an electronic transmitter which would broadcast to receiving and recording equipment that had been installed in a police truck. At the meeting in appellant's motel room, appellant discussed with Warrens and Williams the "past-posting" scheme and the three bets. This conversation was overheard and recorded by police officers in the nearby police truck, and testified to by Officer Thompson.

The following week appellant phoned several times to Warrens to reassure him with respect to the return of his money. No evidence was introduced of any further telephone conversations or other conversations or contact between appellant and Warrens.

Appellant argues that there is nothing in the record to establish that the money furnished by Warrens was not, in fact, bet and lost, and that there is evidence in the record that Warrens furnished the money to appellant in connection with a business transaction. In an interview between an F.B.I. agent and appellant, at

which time counsel for appellant was present, appellant stated that neither he nor anyone else on his behalf had ever gambled with Warrens' money.

When viewed in the light most favorable to sustain the verdict, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Mickelson v. United States, 346 F.2d 952 (9th Cir. 1965), we find ample evidence upon which the jury could properly return verdicts of guilty as to Counts One and Two.

Appellant next contends it was error and a violation of his constitutional rights for the District Court to permit, over objection, Officer Thompson to testify as to the conversation which took place between Warrens, Williams and appellant, which he overheard while recording the conversation while in the nearby police truck.

All of the authorities cited by appellant in support of his contention have previously been considered by us at some length in regard to similar contentions made in Benson v. People of California, 336 F.2d 791 (9th Cir. 1964), C.D. 380 U.S. 951, 85 S.Ct. 1086, 13 L.Ed.2d 970 (1965). We adhere to what we there said and, accordingly, find no error. See, United States v. Beno, 333 F.2d 669 (2d Cir. 1964).

Appellant further objects to the admission of this evidence in reliance upon Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199 (1964), on the ground that no attorney for appellant was present at the time the conversation took place.

In Escobedo, the admissions were made while the defendant was under arrest and although his attorney was in an adjoining room of the police station, each was denied access to the other. In Massiah, the statements were obtained during the inquisitorial stage of the proceedings after the defendant had been indicted and in the absence of his retained attorney. Here, on the other hand, appellant was neither in custody nor under indictment. Instead, he was still participating in the criminal activity for which he was subsequently indicted. "One is not entitled to counsel while committing his crime * * *". Grier, et al. v. United States, 345 F.2d 523 (9th Cir. 1965). See, United States v. Beno, supra.

Appellant argues that it was error to admit into evidence a tape recording of the telephone conversation between appellant and Warrens which was obtained with the consent of Warrens by means of an induction coil attached to his telephone. It is argued that its admission into evidence was in violation of Sec. 605 of the Federal Communications Act, 47 U.S.C.A. § 605.[2]

Sec. 605, however, is not applicable if a communication is monitored, as this was with the consent of one of the communicating parties. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); Lindsey v. United States, 332 F.2d 688 (9th Cir. 1964); United States v. Campbell, 337 F.2d 396 (7th Cir. 1964).

Appellant's distinction that this means of recording the conversation by use of an induction coil takes the case out of the Rathbun, supra, context is not valid for the mechanical nature of the method of overhearing of the conversation is not critical. Carbo v. United States, 314 F.2d 718, 739 (9th Cir. 1963).

Appellant's contention that the recording of the conversation without advance notice to appellant and without the use of a tonewarning device as required

---

**2.** "Section 605 states in pertinent part:

"* * * [N]o person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto * * *."

by an order of the Federal Communications Commission is answered by Ferguson v. United States, 307 F.2d 787 (10th Cir. 1962), Opinion withdrawn on other grounds, 329 F.2d 923 (10th Cir. 1964). There the court said at p. 790, of 307 F.2d:

" * * * a regulation or order directed to the carriers over whom the Federal Communications Commission has jurisdiction, 47 U.S.C.A. § 152, cannot be viewed as creating a new crime prohibited to the citizenry nor as changing the rules of evidence evolved in the federal courts."

■■ On cross-examination of Williams, a prosecution witness, who testified on direct examination to the conversations which occurred at appellant's motel room on March 22, 1963, counsel for appellant inquired if the witness had listened to the tape recording of the conversation. The witness replied that he had, several months prior to the trial. Williams also stated that he had also refreshed his memory from a typed transcript of a portion of the tape on the day before the trial. Counsel for appellant requested to inspect the transcript. Such request was denied by the District Court on the ground that defense counsel "has had an opportunity on two occasions to hear the tape recording in full." The record supports the District Court's statement. Appellant contends that the denial to inspect said transcript was in violation of 18 U.S.C. § 3500—the Jencks Act. We believe that the transcript does not come within the purview of the Jencks Act since it was not a written statement made by the witness and signed or otherwise adopted or approved by him, made to an agent of the government; or a stenographic, mechanical, electrical or other recording or transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement. Apart from the Jencks Act,

the denial of such inspection, if error, is harmless error when viewed in the light of the entire record.

Co-defendant Tenner testified on his own behalf. Some of the testimony given was in conflict with his testimony before the Grand Jury. On cross-examination, over the objection of counsel for appellant, Government counsel was permitted to read portions of the Grand Jury Transcript to impeach Tenner.

■ Appellant contends that Tenner's constitutional rights were violated because Tenner testified that he was not represented by an attorney before the Grand Jury nor did he consult with an attorney prior to going before the Grand Jury. Appellant relies upon Massiah v. United States, supra, and Escobedo v. Illinois, supra. We see no violation of appellant's constitutional rights in connection with the efforts of the Government to impeach the credibility of Tenner.

Finally, appellant contends that the Government counsel was guilty of misconduct in two particulars in his opening and closing arguments to the jury, and that the court erred in the giving and refusal of certain instructions. We believe that the remarks of Government counsel in his arguments to the jury were within the area of fair comment. In connection with appellant's assignment as to instructions, we note that appellant has neither set out the questioned jury instructions nor has he specified his objection in the trial court. There is a complete failure on the part of appellant to comply with the provisions of Rule 18(2) (d) of the Rules of this Court which provide in pertinent part, as follows:

" * * * When the error alleged is to the charge of the court, the specification shall set out the part referred to totidem verbis, whether it be in instructions given or in instructions refused, together with the grounds of the objections urged at the trial."

The judgments of conviction of appellant as to Counts One and Two are affirmed.

We agree with the appellant that the evidence is insufficient to support the verdict of guilty as to Counts Three, Four, Five and Six. Count Three of the indictment reads as follows:

"COUNT THREE

[18 USC, §§ 1343 and 2]

"The Grand Jury realleges all of the allegations in Count One of this indictment except those contained in the last paragraph thereof.

"On or about May 27, 1963, at approximately 10:00 A.M., the defendants JOHN L. BATTAGLIA and HAROLD TENNER, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, transmitted and caused to be transmitted by means of wire, a telephone call, from Reno, Nevada to San Diego, in San Diego County, within the Southern Division of the Southern District of California."

Counts Four, Five and Six are the same as Count Three except that the dates of the offenses alleged are May 27, 1963, May 29, 1963, and June 3, 1963, respectively.

There is no dispute that the telephone call on May 27, 1963, referred to in Count Three; the telephone call on May 27, 1963, referred to in Count Four; the telephone call on May 29, 1963, referred to in Count Five; and the telephone call on June 3, 1963, referred to in Count Six were between Tenner and Warrens. The Government concedes that there is no evidence in the record of contacts or communications between appellant and Warrens after the last week of March, 1963, but contends that since the evidence is sufficient to sustain the convictions of appellant and Tenner under Counts One and Two, the acts and statements of Tenner, referred to in Counts Three through Six, are binding upon appellant in the absence of evidence of some affirmative act on the part of appellant disassociating himself from the scheme to defraud, mentioned in Counts One and Two. While we recognize the rule contended for by the Government, we believe that it has no application to a situation such as exists in this case where it appears that the main purpose of the unlawful association between appellant and Tenner had been accomplished at least two months before the acts and statements embraced in Counts Three to Six occurred, and in which Tenner, alone, participated.

The judgments of conviction of appellant on Counts One and Two are, and each of them is, affirmed. The judgments of conviction of appellant on Counts Three, Four, Five and Six are, and each of them is, reversed. The cause is remanded to the District Court with instructions to vacate and set aside the sentences imposed upon appellant on said last mentioned Counts, and to order the dismissal of said Counts as to the appellant.