# Richmond

ROBERT D. HARMON v. COMMONWEALTH OF VIRGINIA.

March 10, 1969.

Record No. 6874.

Present, All the Justices.

*Lester E. Schlitz (Schlitz and Levy,* on brief), for plaintiff in error.

*Walter H. Ryland, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

This case is before us on a writ of error and supersedeas to a judgment entered by the court below sentencing Robert D. Harmon, pursuant to the verdict of a jury, to twelve months in jail and the payment of a fine of $100 for making obscene telephone calls in violation of Code § 18.1-238.[1]

In substance, the defendant's assignments of error are that the trial court erred in (1) overruling his motion that the evidence was insufficient to sustain a conviction; (2) refusing to suppress certain evidence obtained by the use of a "pen register" device attached to the defendant's telephone line; (3) refusing to question the jurors individually on their *voir dire;* (4) informing the jury that the defendant had rested his case without putting on any evidence; (5) "amending the improper verdict of the jury" without permitting them "to retire and return a proper verdict;" and (6) its rulings on instructions.

The complaining witness, Mary Sue Reed, age 22, who lived with her parents on Hodges Ferry Road in the city of Portsmouth, testified that in September, 1966 she received a number of obscene telephone calls over her parents' telephone. At the request of her parents a number of these calls were traced to the telephone at the residence

---

[1] The material portion of this statute, as amended by Acts of Assembly 1960, c. 358, p. 458, provides:

"If any person shall * * * use vulgar, profane or indecent language over any telephone in this State, he shall be guilty of a misdemeanor. * * * "

of N. M. Harmon on Taylor Road in the city of Chesapeake, where the defendant resided. Subsequently the assistant manager of the telephone company in Portsmouth directed that a "pen register" be attached in the central telephone office to the telephone line leading to the Harmon residence. This device recorded the fact that on certain days and at certain times the Harmon telephone had dialed certain other telephones. It did not record the conversations had at these times.

This official of the company testified that the device was attached to the Harmon telephone line at his direction and upon his responsibility, and that this was done with the knowledge and consent of the Reed family but without the knowledge or permission of the subscriber to the Harmon telephone.

Miss Reed testified that she received a number of obscene telephone calls on September 13, 14 and 20, 1966. The pen register showed that on these dates and at the times specified by Miss Reed the telephone at the Harmon residence dialed the telephone at the Reed residence. She further testified that she was well acquainted with the defendant, Robert D. Harmon; that his mother had tutored her at the Harmon home, and that she frequently saw the defendant when she went to that home. While Miss Reed said that the voices of the defendant, his brother and his father were "similar," she positively identified the voice of the obscene caller as that of the defendant and identified him in court as the offender.

It further appears that at the time these calls were made the defendant was employed by a local road contractor. The records of that company showed that the defendant was not at his place of employment on September 13, 14 or 20, 1966 when the alleged obscene calls were made. The defendant did not take the stand nor was any evidence offered in his behalf.

We find that the evidence on behalf of the Commonwealth, which the jury have accepted, is amply sufficient to sustain their verdict convicting the defendant of violating the statute.

The main contention of the defendant before us is that the trial court erred in refusing to suppress the evidence obtained by the use of the pen register device attached to the Harmon telephone line. As has been said, this device showed that on September 13, 14 and 20, 1966, and at the times detailed by Miss Reed, the telephone at the Harmon residence had dialed that at the Reed residence. This evidence tended to corroborate Miss Reed's testimony that the ob-

scene calls which she received at these times came from the Harmon telephone.

At the trial below the defendant moved to suppress this evidence obtained by the use of the pen register, on the grounds that (1) it violated the defendant's right of privacy in violation of the Fourth Amendment to the Federal Constitution, and (2) it was in violation of § 605 of the Federal Communications Act of 1934, 47 U.S.C. § 605. On the same grounds, we are asked on this appeal to hold that the failure of the trial court to suppress this evidence was reversible error.

■ The defendant's first contention that the evidence obtained by the use of the pen register was in violation of the Fourth Amendment may be quickly disposed of. So far as is here pertinent this amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, ***."

We may assume without deciding that attaching this device to the Harmon telephone line was an invasion of the defendant's privacy and that the evidence disclosed by its use was obtained by an unlawful search. But it has been firmly settled that such constitutional prohibition against unreasonable search and seizure is applicable to agents of the federal and state governments and not to private individuals acting on their own initiative. *Burdeau* v. *McDowell,* 256 U. S. 465, 475, 41 S. Ct. 574, 65 L. ed. 1048, 13 A. L. R. 1159 (1921); *Sutherland* v. *Kroger Company,* 144 W. Va. 673, 110 S. E. 2d 716, 723 (1959); 29 Am. Jur. 2d, Evidence § 417, p. 476; 79 C. J. S., Searches and Seizures, § 5 c., p. 783. Consequently, the rule which excludes evidence obtained by unlawful search because in violation of the Fourth Amendment does not apply where the unlawful search was made by a private individual acting on his own initiative. While a private individual acting in this manner may be guilty of a trespass, the evidence which is thereby obtained is not for this reason inadmissible, unless its admission will violate a constitutional guaranty of the person against whom its admission is sought, or is in contravention of a statutory enactment. 29 Am. Jur. 2d, Evidence § 408, pp. 466, 467; *id.,* § 417, p. 476.

In the present case the evidence which the jury have accepted shows that the pen register was attached to the Harmon telephone line at the direction and responsibility of a private individual, an official of the telephone company. Hence there is no substance to

the defendant's contention that such evidence was obtained in violation of the rights guaranteed to him by the Fourth Amendment.

■ We come next to determine whether § 605 of the Federal Communications Act, 47 U.S.C. § 605, prohibits the admission in evidence of the recordation of calls emanating from the Harmon telephone. This section of the Act provides:

> "[N]o person not being authorized by the sender shall intercept any communication and divulge * * * the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

There are a large number of cases in both the federal and state courts interpreting and applying this section. In none of these has the precise question here presented been decided.

In *Rathbun* v. *United States,* 355 U. S. 107, 78 S. Ct. 161, 2 L. ed. 2d 134 (1957), it was held that where the party receiving a telephone message consented to the listening thereto by another person or an extension line, this did not constitute an unauthorized interception of the communication forbidden by the statute. (355 U. S. at 111.) Following this decision a number of courts have held that the statute does not proscribe the interception or recording of a telephone conversation made with the consent of one of the communicating parties. Among these are, *Battaglia* v. *United States,* 349 F. 2d 556, 559 (9th Cir., 1965); *Lindsey* v. *United States,* 332 F. 2d 688, 691 (9th Cir. 1964); *United States* v. *Campbell,* 337 F. 2d 396, 398 (7th Cir., 1964); *United States* v. *McGuire,* 381 F. 2d 306, 314 (2d Cir., 1967).

In *United States* v. *Dote,* 371 F. 2d 176 (7th Cir., 1966), here relied on, it was held that information that calls were made from the telephone of the defendant obtained by the use of a pen register attached to his telephone by the telephone company at the request of agents of the Internal Revenue Service, but without the consent of the defendant, was an interception of a communication between the telephone of the defendant and that of the intended recipient of the message, forbidden by the statute. Relying on that case, the same result was reached in *Huff* v. *Michigan Telephone Co.,* D.C. Mich., 278 F. Supp. 76 (1967). However, in the latter case it was pointed out that since neither the sender nor the receiver of the telephone calls authorized this interception, nor impliedly consented

thereto, the holding in *Rathbun* v. *United States, supra,* did not apply.

In the case before us, as has been said, the pen register was attached to the Harmon telephone line with the knowledge and consent of Miss Reed, the intended recipient of the calls. If, under the holding in the *Rathbun* case the listening by a third party to a telephone conversation with the consent of one of the parties to the conversation was not an interception of communication forbidden by the statute, then surely the showing, made with the consent of Miss Reed, the intended recipient of the messages, that certain calls had been made from the telephone of the defendant to her telephone was not a violation of the federal statute.

Accordingly, we hold that in the present case the evidence obtained by the use of the pen register, under the related circumstances, was not in violation of the federal statute and therefore inadmissible.

■ We think that the evidence was admissible for this added reason: In *Schwartz* v. *State of Texas,* 344 U. S. 199, 73 S. Ct. 232, 97 L. ed. 231 (1952), the Supreme Court held that the prohibition in § 605 of the federal statute applied to exclude evidence in the federal courts but not in the state courts. (344 U. S. at 203.) In *Lee* v. *State of Florida,* 392 U. S. 378, 88 S. Ct. 2096, 20 L. ed. 2d 1166 (decided June 17, 1968), the holding in *Schwartz* was overturned and it was decided that evidence obtained in violation of the federal statute was inadmissible in state as well as in federal court trials. (392 U. S. at 378.) In *Fuller* v. *Alaska,* 393 U. S. 80, 89 S. Ct. 61, 21 L. ed. 2d 212 (decided October 28, 1968), it was said that the holding in *Lee* should not be applied retroactively, but should be "applied only to trials in which the evidence is sought to be introduced after the date of our decision in *Lee.*"

We interpret the effect of these holdings to be that the decision in *Lee* on June 17, 1968 was not applicable retroactively to the trial of this defendant which took place on July 23, 1967, and that the rule laid down in *Schwartz* applies to the trial of this defendant and does not proscribe the use of evidence obtained in violation of the federal statute.

■ Prior to the selection of the jury counsel for the defendant asked that he be permitted to examine the jurors on their *voir dire* individually. This, he said, was for the purpose of aiding him in making his peremptory challenges. The trial judge took the position that in accordance with the usual practice the questions should be

propounded to the jurors by him and not by counsel for the defendant. Counsel then stated that he had no objection to the court's asking the questions, but insisted that they should be submitted to the jurors "individually rather than jointly." The trial court ruled that it would submit the relevant questions to the jurors as a group and not individually. The defendant challenges this ruling on the ground that it is in violation of Code § 8-199, as amended by Acts of Assembly 1966, c. 496, p. 676.[2]

Counsel having agreed that the questions on the *voir dire* might be asked by the court, the issue before us is not whether counsel for the defendant should have been permitted to question the jurors individually, but whether the court must do so. The substance of the defendant's argument is that the words added by the amendment, that the court "*may* ask such person or juror directly any relevant question" (emphasis added), means that it *must* do so. We do not agree. The language used is not mandatory but permissive and leaves the matter to the discretion of the trial court. Moreover, all of the proper relevant questions requested by counsel for the defendant were asked by the trial court and submitted to the panel in such a manner as to ascertain the answer of each juror. This, we think, satisfied the requirements of the statute.[3]

■ At the conclusion of the Commonwealth's evidence the defendant did not take the stand nor did he offer any evidence in his behalf. When the jury returned to the courtroom after the instructions had been considered in their absence, the trial court thus informed them:

"Gentlemen of the jury, in order that you may understand, while you were out, at the conclusion of the Commonwealth's evidence, the defendant rested without putting on any evidence, and, therefore, you have heard all of the evidence in the case and these are the instructions of the law governing the case."

[2] The statute with the amendments in italics reads thus:

"§ 8-199. The court *and counsel for either party* may examine on oath any person who is called as a juror therein *and may ask such person or juror directly any relevant question* to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein; and the party objecting to any juror may introduce any competent evidence in support of the objection; and if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case."

[3] For a further discussion of the interpretation and application of this statute, see *Dean v. Commonwealth*, 209 Va. 666, 166 S. E. 2d 228, decided today.

Complaint is made that this was an improper comment that the defendant had failed to take the stand, and for that reason his motion for a mistrial should have been granted. There is no substance to this contention. The court merely informed the jury as to what had occurred in the proceeding during their absence—that the evidence was closed when the Commonwealth submitted its case, that the defendant had "rested without putting on any evidence," and that "you have heard all of the evidence." There was no suggestion or indication that the defendant had failed to take the stand.

After the jury had heard the evidence and the instructions of the trial court they returned a verdict which read: "We, the jury, find the defendant, Robert D. Harmon guilty and fix his sentence at one hundred dollars ($100.00) fine and 12 months in jail suspending the jail sentence." The court informed the jury that this verdict was improper because they "did not have the power to suspend the jail sentence." However, it said that it "would consider their verdict as having recommended that the jail sentence be suspended." It then struck from the verdict the words "suspending the jail sentence," and polled the jury as to whether this was their verdict. Each member of the jury replied in the affirmative. The jury were not directed to retire and reconsider the verdict, but as amended it was accepted and recorded.

Although the defendant made no objection to this procedure, he claims on appeal that the action of the trial court was an improper amendment of the verdict. Here, also, the contention is without merit. In several cases we have pointed out that a recommendation for mercy in the verdict of a jury in a criminal trial is mere surplusage, without legal effect, and may be disregarded by the trial court. See *Clarke* v. *Commonwealth*, 207 Va. 298, 149 S. E. 2d 875 (1966), and cases there referred to. In the present case the trial court so proceeded, so informed the jury, and they agreed. While it would have been preferable that the jury be directed to retire and reconsider their verdict after the surplusage words had been eliminated, that was not necessary since the jury were polled and each member indicated his approval of the verdict as amended. Having acquiesced in this procedure the defendant is in no position to complain of it.

We find no substance to the defendant's contention that the trial court erred in its rulings on instructions granted and refused. From a consideration of the record we are satisfied that the jury were fully and fairly instructed on all of the issues involved.

On the whole, we find no error in the proceedings in the trial court and the judgment is

*Affirmed.*