STATE OF NORTH CAROLINA v. FRANK PEELE

No. 7212SC697

(Filed 25 October 1972)

1. Indictment and Warrant § 12; Larceny § 4— amendment of indictment — sufficiency of single count to support sentence

Where defendant was tried upon a three count bill of indictment with breaking and entering and larceny, the trial court's error, if any, in striking part of the second count was not prejudicial since the sentence imposed was fully warranted by conviction under the first count alone.

2. Constitutional Law § 21; Searches and Seizures § 1— search by private individual — admissibility of evidence

Evidence concerning property found in defendant's attic as a result of a search of his house conducted without a warrant by the victim of a larceny was properly admitted since the security against unreasonable searches and seizures afforded by the Fourth Amendment applies solely to governmental action and not to individual action.

3. Criminal Law § 169— evidence of shotgun and pistol — harmless error

Defendant failed to show prejudicial error in the admission of evidence concerning a pistol and shotgun returned to the victim of a larceny by a friend of the accused.

4. Burglary and Unlawful Breakings § 5; Larceny § 7— sufficiency of evidence to support charge

In a prosecution for breaking and entering and larceny, there was substantial evidence which, considered in the light most favorable to the State, would warrant the jury's finding defendant guilty of all material elements of the offenses for which he was charged.

APPEAL by defendant from *Clark, Judge,* 1 May 1972 Session of Superior Court held in CUMBERLAND County.

On 16 November 1971 defendant was arrested on a warrant charging him in three counts with the following offenses: (1) The felonious breaking and entering on 8 November 1971 of the dwelling located at 519 North Platte Drive, Fayetteville, N. C., occupied by Peter Hall, Joel Noah and Phillip Guilford; (2) the larceny on 8 November 1971 of a television set, shotgun, tape recorder, turntable, Kenwood stereo amplifier receiver, and other specifically described items of personal property, of the total value of about $1,480.00, the property of Peter Hall; and (3) the larceny on 8 November 1971 of a blanket, pillowcase, and a .25 caliber pistol, of a total value of about $45.00, the property of Joel Noah. On 7 March 1972 defendant was tried in the district court for the misdemeanor charged in the third count of the warrant and was found not guilty of that offense. On the same date the district court judge conducted a preliminary hearing and found probable cause on the felony charges contained in the first two counts of the warrant.

At the 1 May 1972 session of superior court the grand jury returned as a true bill a bill of indictment which charged defendant in three counts with the following offenses: (1) The felonious breaking and entering on 8 November 1971 of the dwelling occupied by Hall, Noah and Guilford located at 519 North Platte Drive, Fayetteville; (2) the felonious larceny after such breaking and entering of the television set, shotgun, and the other articles which had been described in the second count in the warrant, of the value of $1,480.00, the personal property of Peter Hall, and the blanket, pillowcase, and .25 caliber pistol of the value of $45.00, the personal property of Joel Noah (which latter property of Joel Noah had been described in the third count in the warrant on which defendant had been previously tried in the district court and found not guilty) ; and (3) the felonious receiving of the personal property described in the second count in the indictment.

The record on this appeal contains the following:

"Prior to entering plea, defendant moved in chambers that a finding in the District Court of not guilty as to part of the larceny charge would serve as a plea in bar to the larceny indictment. Defendant further moved that as the larceny indictment was tainted the entire

State v. Peele

larceny indictment was, therefore, voided. The Court agreed that the plea of double jeopardy was applicable in the case at bar and struck the portion of the larceny indictment pertaining to Joel Noah's property. However, the Court denied the defendant's motion to quash the entire larceny count of the indictment."

Upon arraignment on the charges contained in the bill of indictment as deleted, defendant pleaded not guilty to all counts.

Joel Noah, the only witness presented by the State, testified in substance to the following:

In November 1971 he, Peter Hall, and Phillip Guilford, resided at 519 North Platte. Noah knew the defendant, Frank Peele, and on 7 November 1971 defendant Peele and Lee Smith, a friend of defendant's, had come over to Noah's house. On the evening of 7 November 1971 and on the day of 8 November 1971 Noah's house was secure and there were no broken windows or doors. Later, when Noah returned to the house, he discovered that someone had broken the window in the living room and had entered the house, and the following items were missing: a turntable, two tape decks and an amplifier belonging to Peter Hall; a shotgun and a television belonging to Phillip Guilford; and a .25 caliber pistol, a blanket, a poncho, and a pillowcase belonging to Noah. Noah had not given anyone consent to remove anything from his house and to the best of his knowledge his roommates had not given consent to anyone. On 15 November 1971 Noah and Guilford went to defendant's house at Breezewood Avenue and told defendant that their house had been broken into, that the descriptions which had been given them fitted the defendant and his car, and that they thought defendant had done it. Defendant told Noah that he had picked up some stereo equipment that day with a man named Williams at a house familiar to defendant, but that defendant did not know who lived in the house; that the reason Williams went into the house was that the stereo equipment belonged to Williams, who had left it at that house; that all defendant had done was to unlock the trunk of his car; and that Williams had taken everything out of the car except one amplifier, which defendant told Noah he had in his house. Noah then called Deputy Sheriff Burgess, who came to defendant's house with another officer. When the officers arrived,

Noah, Guilford, and defendant were outside of defendant's house. Burgess asked defendant to sign a paper which would give him permission to enter the house. Defendant refused to sign the paper but stated that he would give Mr. Burgess permission to search.

(At this point in witness Noah's testimony, the trial court conducted a lengthy *voir dire* hearing and found that defendant had freely and voluntarily given Deputy Sheriff Burgess consent to search his house. The court concluded that the search pursuant to such consent was valid and that property seized pursuant thereto was admissible in evidence. On this appeal no exception has been taken to this ruling.)

Noah accompanied Deputy Sheriff Burgess and defendant Peele into Peele's house and went through the living room into Peele's bedroom. On the floor in the bedroom was some stereo equipment. Noah inspected this equipment and was able to identify the Kenwood amplifier and a pair of frayed headsets which belonged to Peter Hall. He also recognized a poncho lining as his own. Noah then assisted the other deputy in trying to look in the attic. He pulled a chair over and just got his head up there, but it was so high he couldn't hold his place and look at the same time. There were no lights in the attic and he was not able to see anything. No one went into the attic at that time. A couple of days later, about 17 November 1971, Noah and Guilford returned to defendant Peele's home with defendant's friend, Lee Smith, who let them in the front door of the house. Smith went to the attic, climbed up into the loft, and began bringing pieces of equipment which had been stolen from Noah and his roommates and handing them down through the roof to Noah and Guilford.

At this point in witness Noah's testimony, defendant's counsel objected and requested a *voir dire*. On the *voir dire*, the following witnesses were examined and testified in substance as follows:

Noah testified that Smith, who was also charged with breaking and entering his house, had come to him and stated that he could get the stolen merchandise back from defendant Peele if Noah would drop the charges against Peele and Smith; that before going to defendant's house with Smith, Noah did not communicate with Detective Burgess or any other law

enforcement official; that Smith went into the house with a key, and when they left Smith locked the door; that defendant was not at the house at the time; that only several months later, at the time of the preliminary hearing, did Noah tell Officer Burgess that he had found the items in the attic. Detective Burgess testified that the first time he learned that other items were found in defendant's home was at the preliminary hearing. Defendant Peele testified that he was not at home when Smith and Noah came to his house; that he did not give Smith or anyone else permission to enter his house; that he did not have a key to his house; that the lock on his house was not a key-type lock but was a combination lock; that there were no keys to the lock; that Smith was a friend of his and was charged with the same breaking and entering and larceny; that when he and Smith were picked up, they were put in the same cell; that Smith got out but he had had to stay a little longer; that he never told Smith to go see Noah; that Smith had never stayed with him at his house; that he did not know where Smith was at the time of the trial; and to the best of his knowledge Smith had never put anything in his attic.

At the conclusion of the *voir dire* examination, the trial judge found "the facts to be as testified by the three witnesses on voir dire, there being no conflicting evidence," and ruled as a matter of law that evidence concerning the property stored in the attic was admissible.

Following this ruling, Noah continued his testimony before the jury and in substance testified that Smith had handed down from the attic two tape decks and a turntable, an implifier, a reverberator unit which leads into an amplifier, and a blanket which was Noah's; that he could identify these items because they had had them for over two years; and that the turntable had certain scratches on top and under the case. Noah also testified:

"All the items were not recovered. Smith said he would have to get some more items at another place. A couple days later Smith returned to my house with a shotgun and pistol that had been stolen. I could identify the shotgun and pistol by the serial numbers. The shotgun belonged to Phillip Guilford."

Defendant's motion to strike the above-quoted portion of Noah's testimony was overruled. Defendant's motion for nonsuit at the close of the State's evidence was denied.

Defendant testified that on 8 November 1971 he had occasion to see a man whom he knew by the name of Williams; that Williams asked him if he was interested in stereo equipment; that he went with Williams to a house to purchase or to look at the equipment; that he was not sure where the house was; that he did buy the stereo amplifier for $50.00; that he did not buy any other item from Williams at that time; that he had seen Williams on several occasions prior to 8 November but had not seen him since; that on 15 November he had talked with Noah at his home on Breezewood Avenue, and that Noah said he had already been in Peele's house and had seen the stereo equipment that belonged to him and wanted to know where Peele got it; that he told Noah he had purchased it from Williams, and had offered to take Noah into the house and show him the amplifier, and if it belonged to Guilford or Noah "then we would square it up from there." Defendant also testified that he was in jail on the 17th and 18th of November and did not give Lee Smith permission to go in his house, and he did not know when the items Noah found in the attic were placed there.

The jury found defendant guilty as charged of felonious breaking and entering and of larceny pursuant to breaking and entering. Judgment was imposed on the verdict sentencing defendant to prison for a term of five years as a committed youthful offender. Defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General Thomas B. Wood for the State.*

*Assistant Public Defender Neill Fleishman for defendant appellant.*

PARKER, Judge.

[1] Appellant first assigns error to denial of his motion to quash the larceny count in the indictment. In support of this assignment he contends that, absent his consent, the trial court had no power to make any change in the bill of indictment as returned by the grand jury, that the larceny count in the bill of indictment in the form in which it had been returned a true bill by the grand jury charged him with larceny of certain particularly described items of property of Joel Noah as well as with larceny of property of Peter Hall, and that, having

already been acquitted in the district court of the charge of larceny of the identical property of Joel Noah, his motion to quash the entire larceny count should have been granted.

At the outset, we observe that when facts constituting double jeopardy do not appear from the allegations of the bill of indictment itself, the defense of former jeopardy may not be taken advantage of by motion to quash. *State v. Cooke,* 248 N.C. 485, 103 S.E. 2d 846. However, since the record in the present case is not entirely clear as to what type of motions appellant made before the trial judge and "[s]ince the law looks at substance rather than form," *State v. Wilson,* 234 N.C. 552, 67 S.E. 2d 748, we shall consider appellant's contentions in connection with his first assignment of error as though these were properly presented on the record before us.

At common law the courts had no power to amend matters of substance in a bill of indictment, and in this State there is no statute allowing amendments to bills of indictment. *State v. Haigler,* 14 N.C. App. 501, 188 S.E. 2d 586. Therefore, "[a]n indictment duly returned upon oath cannot usually be amended by the court without the concurrence of the grand jury by whom it was found or the consent of the defendant." *State v. Dowd,* 201 N.C. 714, 161 S.E. 205. In the present case the only "amendment" to the indictment made by the trial judge was to strike from the larceny count words which might well be considered mere surplusage. The deletion in no way changed the nature or the degree of the offense charged and we perceive no reason why defendant was not as fully apprised of the charge against him after the deletion as before. Courts of some jurisdictions have expressly approved amendments eliminating a portion of the property described in the indictment, Annot., 15 A.L.R. 3d 1357, § 4, and it may well be that even absent a statute authorizing amendments such a deletion could properly be approved. That question, however, need not be decided on the present appeal. Here, there was no defect in the first count in the bill of indictment and only one sentence was imposed on the jury's verdict finding defendant guilty of the charges contained in both the first and second counts. Since the sentence was fully warranted by the conviction under the first count alone, error, if any, relating solely to the second count is of no avail to defendant. *State v. Jackson,* 280 N.C. 563, 187 S.E. 2d 27; 41 Am. Jur. 2d, Indictments and Informations, § 309,

p. 1071. Appellant's first assignment of error is accordingly overruled.

**[2]** The next assignment of error brought forward in appellant's brief is that the trial court erred in allowing the State to introduce evidence concerning the items of property found in defendant's attic as result of the second search of his premises, which was made without a search warrant and at a time when he was not personally present and consenting to the search. This assignment is without merit. The security against unreasonable searches and seizures afforded by the Fourth Amendment to the Constitution of the United States applies solely to governmental action. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; *Barnes v. U.S.,* 373 F. 2d 517 (5th Cir. 1967); *United States v. Goldberg,* 330 F. 2d 30 (3d Cir. 1964), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed. 2d 497; *Harmon v. Virginia,* 209 Va. 574, 166 S.E. 2d 232. It is not invaded by acts of individuals in which the government has no part. The record in the present case makes manifest that the police in no way participated in the second search and indeed had no knowledge that it had taken place until some months after it occurred. Nothing in the record supports appellant's assertion, made in his brief on this appeal, that the State's witness, Noah, was "a defacto police agent." No violation of appellant's constitutional rights has been shown in the trial court's action permitting the State to introduce evidence concerning the property found in defendant's attic as result of the second search of his house.

**[3]** Appellant's contention that he suffered prejudicial error when the trial court refused his motion to strike evidence concerning the shotgun and pistol which his friend, Smith, returned to the State's witness, Noah, is also without merit. Nothing in the evidence connected these items directly with the defendant, and if it be granted that the evidence concerning them should have been stricken, we find the error, if any, not sufficiently prejudicial to warrant a new trial in view of the mass of competent evidence which had been admitted to establish defendant's guilt. The burden is upon appellant not only to show error but to show as well that he has been prejudiced thereby, and this he has failed to do.

**[4]** There was no error in denying defendant's motions for nonsuit and for a directed verdict of not guilty. There was

substantial evidence which, considered in the light most favorable to the State, would warrant the jury's finding defendant guilty of all material elements of the offenses for which he was tried. This is all that was required to send the case to the jury. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

The evidence in this case made the doctrine of possession of recently stolen property applicable, and the court's instructions to the jury, considered as a whole, correctly applied that doctrine to the evidence.

We have carefully considered all of appellant's remaining assignments of error, and find no error sufficiently prejudicial to warrant a new trial.

No error.

Judges CAMPBELL and MORRIS concur.