550 P.2d 121

**STATE of Arizona, Appellee,**

v.

**Gretchen Mary KAPPES, Appellant.**

**No. I CA–CR I271.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 27, 1976.

Rehearing Denied June 29, 1976.
Review Denied July 20, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div.; Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Aspey, Watkins & Diesel by F. M. Aspey, Flagstaff, for appellant.

## OPINION

FROEB, Judge.

Appellant was convicted of possession of marijuana, in violation of A.R.S. § 36–1002.05, which the court elected to treat as a misdemeanor by its judgment dated April 28, 1975. Imposition of sentence was suspended for one year and the appellant was placed on probation.

The sole issue on appeal is whether the trial court should have suppressed evidence which consisted of two marijuana butts, a smoking pipe, and a bag of marijuana, on the ground that their discovery and seizure were the result of an unlawful search. Following denial by the court of appellant's motion, the issue of guilt or innocence was submitted to the court for determination based upon the testimony adduced at various pre-trial hearings.

At the time of these proceedings, appelland was an 18-year-old freshman attending Northern Arizona University in Flagstaff, Arizona. She was the sole occupant of a room in the South Campus Dormitory, owned and operated by the university. She had previously applied for university housing and signed a "housing agreement" by which, among other things, appellant agreed to abide by the regulations of the university set forth in the catalog and student handbook. The agreement also provided that the rules and regulations of the school were incorporated in the agreement by reference.

One of these regulations provided that the university could enter a dormitory room and inspect for cleanliness, safety or the need for repairs and maintenance. In accordance with this regulation, it was the policy of the university to conduct a routine inspection of dormitory rooms once a month. Notice of each inspection was posted 24 hours beforehand.

A room inspection took place on November 19, 1974, in accordance with the routine. On that date, Lois Ashley and Ed Hanson, both student resident advisors, entered ap-

pellant's room by means of a master key and saw, in plain sight on the desk, the pipe and marijuana butts earlier referred to. Lois Ashley then called her supervisor, Bernie Sikorski, who in turn called the campus security office to summon security officers to the room. Shortly thereafter Chief Danielson, Lieutenant Keltner and Officer Norman arrived and were admitted into appellant's room by Lois Ashley. Although Lois Ashley and Ed Hanson were not officials of the university, security officers Danielson and Keltner were university employed and Officer Norman was a police officer commissioned by the State of Arizona. Upon seeing the pipe and marijuana butts, Danielson and Keltner left Norman in the room and went to the Dean of Students to obtain a "search authorization." This is a document issued by the school administrator to search a given room when there is reason to believe it contains illegal drugs or narcotics. Its only purpose is to obtain evidence for school disciplinary proceedings against the student. It does not purport to justify a search for court purposes.

Before the search authorization issued, appellant returned to her room and was placed under arrest by Officer Norman after being advised of her Miranda rights. Norman also advised her that a "search authorization" was on its way. Appellant then became upset and pulled a bag of marijuana out of a nearby closet and gave it to Norman. A few minutes later a security officer returned to the room with the search authorization and a search followed. Other contraband, revealed by reason of the ensuing search, was suppressed by the trial court as inadmissible and is not at issue here. The conviction of appellant in these proceedings was based only upon the bag of marijuana, the two butts and the pipe.

Was this evidence obtained as the result of an unlawful search or seizure in violation of the fourth amendment to the United States Constitution?

The fourth amendment protects persons from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Hutton,* 110 Ariz. 339, 519 P.2d 38 (1974). Evidence illegally seized by law enforcement officials will be excluded as evidence in state courts under the due process clause of the fourteenth amendment. *Mapp v. Ohio,* 367 U. S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

In applying the requirements of the fourth amendment to this case, two considerations appear. The first is whether the entry to appellant's room by the student resident advisors and thereafter by the university and law enforcement officials constituted governmental intrusion. The second is, assuming the seizure to have been the result of governmental intrusion, whether it was nevertheless reasonable and thus not violative of the fourth amendment. It is clear that the admissibility of the evidence turns on whether the student resident advisors lawfully entered the room and, once there, whether it was within their authority to give entry to university and law enforcement officials.

While we have not heretofore been confronted with the issue, other courts have held that if a law enforcement official initiated the investigation and then gained entry to a student's room without a warrant, evidence seized thereby would be barred under the fourth amendment. See *Piazzola v. Watkins,* 316 F.Supp. 624 (M.D.Ala. 1970), aff'd. 442 F.2d 284 (5th Cir. 1971); *People v. Cohen,* 57 Misc.2d 366, 292 N.Y. S.2d 706 (1968), aff'd. 61 Misc.2d 858, 306 N.Y.S.2d 788 (1969); *Commonwealth v. McCloskey,* 217 Pa.Super. 432, 272 A.2d 271 (1970); cf. *Brown v. State,* 15 Md.App., 584, 292 A.2d 762 (1972); but see: *People v. Kelly,* 195 Cal.App.2d 669, 16 Cal.Rptr. 177 (1961). The same result has followed where the entry is made by a school official who does so at the request of, or in cooperation with, law enforcement officials. See: *People v. Edwards,* 14 Cal.App.3d 57, 92 Cal.Rptr. 91 (1970); *Stapleton v. Su-*

*perior Court,* 70 Cal.2d 97, 73 Cal.Rptr. 575, 447 P.2d 967 (1969). But where the entry is made by a student advisor conducting a routine dormitory inspection announced in advance, we cannot say that the intrusion is the result of government action which will invoke the fourth amendment, and, consequently, the exclusionary rule.

The purpose of the room inspection is not to collect evidence for criminal proceedings against the student, but to insure that the rooms are used and maintained in accordance with the university regulations. While the actions of the student resident advisors in carrying out room inspections serve the internal requirements of the university, we do not find that they are tainted with that degree of governmental authority which will invoke the fourth amendment. See: *In Re Donaldson,* 269 Cal.App.2d 509, 75 Cal.Rptr. 220 (1969). It follows then that the student advisors acting in this capacity do so as private persons rather than government agents for the purpose of the exclusionary rule. Their conduct is not circumscribed by the fourth amendment since its sanctions do not apply to private persons. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *State v. Aikins,* 17 Ariz.App. 328, 497 P.2d 835 (1972).

■ Once the student resident advisors were lawfully inside appellant's room and discovered the marijuana, they were justified in giving entry to university and law enforcement officials. The subsequent seizure by a law enforcement officer thus did not violate the fourth amendment, because the marijuana and the pipe were in plain view and not the result of a search. *State v. Childs,* 110 Ariz. 389, 519 P.2d 854 (1974).

■ Even if we were to decide that entry by the student advisors to carry out a routine room inspection amounted to governmental intrusion, we find, under the facts of this case, that it was not unreasonable. The right of privacy protected by the fourth amendment does not include freedom from reasonable inspection of a school-operated dormitory room by school officials. cf. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The university has an obligation to provide a safe and studious environment for those in attendance. It must be solicitous of the health, welfare and safety of its students, many of whom are experiencing life away from home for the first time. It is entirely appropriate that it routinely inspect its dormitory rooms for orderliness and safety, and its authority to do this does not compromise a student's right to protection of the fourth amendment. Moreover, the student acknowledges this in writing when he signs the housing agreement and accepts the room on these conditions. Under these circumstances it can hardly be said that contraband seized in plain view has been the subject of an unreasonable search. cf. *Moore v. Student Affairs Committee of Troy State University,* 284 F.Supp. 725 (M.D.Ala.1968).

Several other cases, in addition to those previously referred to, are urged by appellant to support her position. We find, however, that they are not persuasive when applied to the facts of this case. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) involved an attempted administrative search without a warrant by a city administrative official conducting inspections for violations of a city housing code. The Supreme Court found such administrative searches constituted "significant intrusions upon the interests protected by the fourth amendment." We find, however, a substantial difference between routine inspection of rooms in a university dormitory and the housing code inspection in *Camara.* We reach the same conclusion with respect to *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) and *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

Finally, in *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961)

an illegal distillery was in operation upon rented premises. When the odor was noticed by the owner from the outside, he called the police who forced their way inside and seized the evidence. The entry and seizure in *Chapman* differ from the present case in several particulars, not the least of which is the fact that in *Chapman* the warrantless entry upon the premises by law enforcement officers was without authority whereas in the present case the entry was lawful.

Since the search and seizure in the present case did not violate the fourth amendment, the court correctly denied the motion to suppress the evidence. The judgment is therefore affirmed.

DONOFRIO and OGG, JJ., concur.