STATE OF NORTH CAROLINA v. JOHN KEADLE

No. 8015SC833

(Filed 5 May 1981)

**Searches and Seizures § 2– search by resident advisor of university dorm – evidence improperly excluded**

In a prosecution of defendant for breaking and entering and larceny, the trial court erred in excluding evidence which was discovered by a resident advisor in a university dorm when he checked for lights left burning in vacant dormitory rooms and which was seized by the campus police who had obtained a search warrant for defendant's room on the basis of the resident advisor's information, since the resident advisor's contact with the State was not such as to make him a quasi law enforcement officer or agent of the State for the purpose of making the fourth amendment and the exclusionary rule applicable.

APPEAL by the state from *Brewer, Judge.* Order entered 29 May 1980 in Superior Court, ORANGE County. Heard in the Court of Appeals 29 January 1981.

Defendant was charged by indictment with the crimes of breaking and entering and larceny. He filed a pretrial motion to suppress evidence of these crimes which he claimed was seized as the result of an illegal search and seizure.

In ruling on this motion, the court considered defendant's affidavit and brief in support of the motion along with the State's responsive brief on the motion. Those documents tended to show the facts surrounding the allegedly illegal search and seizure as follows: Bob Goldberg was a resident advisor for the University of North Carolina at Chapel Hill. As such, he was in charge of the sixth floor of Ehringhaus Dormitory. Goldberg had knowledge of the theft of a Sanyo tape deck, valued at $235, from the possession of a dorm resident, Kris R. Keeney, on 24 November 1979.

On that date, Goldberg was performing an expected function of a resident advisor of the University in checking for lights left burning in vacant dormitory rooms. He noticed the light was on in room 624, the defendant's room, and pursuant to University policy, opened the door to turn it off. While in the room, he noticed a blanket draped over an object on defendant's bed. Goldberg investigated and found a Sanyo tape deck under the blanket. He informed Kris Keeney of this discovery, and the

two returned to room 624 to examine the tape deck further. Keeney examined the tape deck and identified it by serial number as the one which had been stolen from him.

There was no evidence to indicate that when Goldberg looked under the blanket on defendant's bed, he was performing a University function, nor was there any evidence that he had any direction, instruction, or request from any law enforcement officer to do so.

Following Keeney's identification of the tape player, Goldberg and Keeney reported these occurrences and their discovery to Officer Morton of the campus police. Acting on this information, Officer Morton obtained a search warrant for defendant's room and seized the tape player. Subsequently, Officer Morton talked with defendant who admitted breaking into Kris Keeney's room and taking the tape player.

In its order of 29 May 1980, the court made findings of fact and concluded as a matter of law that the conduct of Bob Goldberg constituted an unreasonable search by an employee and agent of the State of North Carolina acting in a quasi law enforcement capacity; the information contained in the search warrant resulted from an illegal and unreasonable search; and the evidence seized pursuant to the search should be suppressed, because the search violated the constitutional rights of defendant as to reasonable search and seizure. Accordingly, the court allowed defendant's motion to suppress. The state appealed from the court's order.

*Attorney General Edmisten, by Associate Attorney Sarah C. Young, for the State.*

*Emma Jean Levi for defendant appellee.*

MORRIS, Chief Judge.

The state contends that the trial court improperly found that Bob Goldberg, as resident advisor in a University dormitory, acted as an agent of the state in a quasi law enforcement capacity when he conducted his search of defendant's dorm room. We agree.

The fourth amendment protects individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The exclusionary rule which

was developed to enforce the restraints of the fourth amendment was applied to the federal government in *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914), and was made binding upon the states in *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961).

The protections of the fourth amendment and the attendant exclusionary rule have traditionally been confined to governmental rather than private action. *Burdeau v. McDowell,* 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574 (1921); *State v. Morris,* 41 N.C. App. 164, 254 S.E. 2d 241, *cert. denied and appeal dismissed,* 297 N.C. 616, 267 S.E. 2d 657 (1979); *State v. Reagan,* 35 N.C. App. 140, 240 S.E. 2d 805 (1978); *State v. Carr,* 20 N.C. App. 619, 202 S.E. 2d 289 (1974); *State v. Peele,* 16 N.C. App. 227, 192 S.E. 2d 67, *cert. denied,* 282 N.C. 429, 192 S.E. 2d 838 (1972). *See* Annot. 36 A.L.R. 3d 553 (1971).

In *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh. denied,* 404 U.S. 874, 30 L. Ed. 2d 120, 92 S. Ct. 26 (1971), the United States Supreme Court affirmed its adherence to the rule of *Burdeau.* In *Coolidge* the wife of a murder suspect voluntarily gave her husband's clothes and guns to police officers who had come to her home for the purpose of checking the husband's story against whatever his wife might say and to corroborate his admission of a theft from his employer. From evidence received from the wife, the police officers procured a warrant for her husband's arrest. Justice Stewart, speaking for the Court, stated the following with regard to this issue:

> Had Mrs. Coolidge, wholly on her own initiative, sought out her husband's guns and clothing and then taken them to the police station to be used as evidence against him, there can be no doubt under existing law that the articles would later have been admissible in evidence. *Cf. Burdeau v. McDowell,* 256 U.S. 465, 65 L. Ed. 1048, 41 S. Ct. 574, 13 ALR 1159.

403 U.S. at 487, 29 L. Ed. 2d at 595, 91 S. Ct. at 2048. Justice Stewart went on to say with regard to whether the exclusionary rule should have been applied under the facts of *Coolidge:*

> The question presented here is whether the conduct of the police officers at the Coolidge house was such as to make

her actions their actions for purposes of the Fourth and Fourteenth Amendments and their attendant exclusionary rules. *The test, as the petitioner's argument suggests, is whether Mrs. Coolidge, in light of all the circumstances of the case, must be regarded as having acted as an "instrument" or agent of the state when she produced her husband's belongings.* (Citations omitted.) ... The exclusionary rules were fashioned "to prevent, not to repair," and their target is official misconduct. They are "to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Elkins v. United States*, 364 U.S. 206, 217, 4 L. Ed. 2d 1669, 1677, 80 S. Ct. 1437. But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. (Emphasis added.)

403 U.S. at 487-88, 29 L. Ed. 2d at 595, 91 S. Ct. at 2048-49.

Where a search and seizure is conducted by a private citizen rather than a governmental officer, the admissibility of the fruits of such a search into evidence may be supported on the ground that no fourth amendment violations are involved, but also on the ground that the purpose of the exclusionary rule, the deterrence of unlawful police conduct, would not be furthered by excluding evidence on the basis of unlawful conduct of private individuals. Therefore, where an unreasonable search is conducted by a governmental law enforcement agent, it is subject to the restraints of the fourth amendment and the exclusionary rule. Moreover, where a search is conducted by a private citizen, but only at the government's initiation and under their guidance, it is not a private search but becomes a search by the sovereign. However, a search not so purely governmental must be judged according to the nature of the governmental participation in the search process. In the instant case, we have one of those vague factual situations requiring that we look at all of the circumstances to assess the amount of governmental participation and involvement, if any, either through the resident advisor's contact with the government as an employee of the University of North Carolina or through direct governmental initiation and guidance of the search procedure.

As to the latter, there is no evidence that law enforcement officials had any part whatsoever in Bob Goldberg's initial search of defendant's room. Judge Brewer specifically found the following undisputed facts in his order of 20 June 1980 granting defendant's motion to suppress:

9. That Bob Goldberg was performing an expected function as Resident Advisor in checking for lights left on in vacant dormitory rooms.

.   .   .

11. That there is no evidence that when Bob Goldberg looked under the blanket on the defendant's bed that he was performing a University function, nor is there any evidence that he had any direction, instruction, or request from any law enforcement officer to do so.

.   .   .

13. That no law enforcement officer personally entered, nor directed anyone else's entry, into the defendant's room until after he had obtained the search warrant contained in the file of this case.

The findings of fact speak for themselves.

The crux of the state's appeal narrows to the issue of whether Goldberg's contact with the state, through his position as a resident advisor, was such as to make him a *quasi* law enforcement officer or agent of the state for purpose of making the fourth amendment and the exclusionary rule applicable to this situation. We are of the opinion that as a resident advisor, Goldberg did not have sufficient contact with the state for this purpose. As a resident advisor in a dormitory, he had neither the status nor the authority of a law enforcement officer. It would serve no useful function as a deterrent to illegal governmental searches to apply the exclusionary rule in this instance. The resident advisor, motivated by reasons independent of a desire to secure evidence to be used in a criminal conviction, would be under no disciplinary compulsion to obey the exclusionary rule. Therefore, in this instance, we think that the government contact is so tenuous as to render the fourth amendment and the exclusionary rule inapplicable.

In *State v. Kappes*, 26 Ariz. App. 567, 550 P. 2d 121 (1976), the Arizona Court of Appeals found that a routine room inspection by two resident advisors at a state university during which drugs were found in defendant's room did not constitute a governmental intrusion. Thus, the government's involvement was insufficient to invoke the fourth amendment, and, consequently, the exclusionary rule. In rendering its decision, the court stated:

> The purpose of the room inspection is not to collect evidence for criminal proceedings against the student, but to insure that the rooms are used and maintained in accordance with the university regulations. While the actions of the student resident advisors in carrying out room inspections serve the internal requirements of the university, we do not find that they are tainted with that degree of governmental authority which will invoke the fourth amendment. See: *In Re Donaldson*, 269 Cal. App. 2d 509, 75 Cal. Rptr. 220 (1969).

26 Ariz. App. at 570, 550 P. 2d at 124. The reasoning of the Arizona court parallels our own.

For these reasons, we hold that the intrusion present here did not reach the level which would necessitate the application of constitutional safeguards. Therefore, we reverse the trial court's order allowing defendant's motion to suppress this evidence and remand this case to the superior court for trial.

Reversed and remanded.

Judges VAUGHN and BECTON concur.