STATE v. HAUSER

[115 N.C. App. 431 (1994)]

STATE OF NORTH CAROLINA v. ALLEN WYLIN HAUSER

No. 9321SC665

(Filed 5 July 1994)

**Searches and Seizures §§ 14, 106 (NCI4th)— garbage behind defendant's house—expectation of privacy—trash collector as police agent—illegal search of garbage—search warrant based on informant's statements—search of house constitutional**

Defendant's garbage which was placed behind his house, adjacent to the house itself, in an area barely visible from the road and which was contained in secured garbage bags and a roll-out cart with a closed lid was not exposed to public access such that his objective expectation of privacy in the garbage was destroyed, and the trash collector who picked up the garbage and turned it over to police was acting as their agent; therefore the search and seizure of defendant's garbage was unconstitutional. However, information supplied by four informants, separate and apart from the illegal search of defendant's garbage, provided a substantial basis for probable cause necessary to support a search warrant for defendant's house and the trial court therefore did not err in refusing to suppress contraband taken from defendant's house pursuant to the warrant.

**Am Jur 2d, Searches and Seizures §§ 36, 37, 120, 121.**

**What is within "curtilage" of house or other building, so as to be within protection from unreasonable searches and seizures, under Federal Constitution's Fourth Amendment—Supreme Court cases. 94 L. Ed. 2d 832.**

**Applicability of "plain view" doctrine and its relation to Fourth Amendment prohibition against unreasonable searches and seizures—Supreme Court cases. 110 L. Ed. 2d 704.**

Judge ORR concurs in the result only.

Appeal by defendant from guilty plea entered 18 March 1993 by Judge Donald W. Stephens in Forsyth County Superior Court. Heard in the Court of Appeals 7 March 1994.

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Daniel C. Oakley, for the State.*

*Wright, Parrish, Newton & Rabil, by Carl F. Parrish and Nils E. Gerber, for defendant-appellant.*

WYNN, Judge.

On 13 July 1992, Detective T. L. Phelps of the Winston-Salem Police Department submitted an application for a warrant to search the premises of 5350 Sunrise Terrace in Winston-Salem, North Carolina for illegal drugs. In that application, Detective Phelps stated that he had received reliable information regarding defendant's drug sale operation from four individuals and had found cocaine in a garbage bag that was seized from the premises on 10 July 1992. The warrant was issued. In the ensuing search, officers found more than a pound of cocaine in defendant's home. Defendant was arrested and indicted by a grand jury for trafficking in cocaine in violation of N.C. Gen. Stat. § 90-95(h)(3)(a); maintaining a building for the use and sale of controlled substances in violation of N.C. Gen. Stat. § 90-108(a)(7)(b), and for possession of drug paraphernalia in violation of N.C. Gen. Stat. § 90-113.22. Defendant moved to suppress the items of contraband seized from his residence pursuant to the search warrant. The motion was denied. On 18 March 1993 defendant entered notice of appeal from the order denying the motion to suppress and pled guilty to the three charges. He received a sentence of ten years imprisonment and a $50,000 fine.

Defendant argues that the contraband should have been suppressed because the warrant under which it was seized was based on an unconstitutional search and seizure of his garbage. We conclude that the search and seizure of defendant's garbage violated the Fourth Amendment, however, the information from the four individuals, separate and apart from the search of defendant's garbage, provided probable cause for the search warrant.

Several days before defendant's garbage was seized, Detective Phelps contacted the Winston-Salem Sanitation Department. He advised a supervisor, Mr. Marion Belton, that the police department wanted a sanitation worker to collect the trash at defendant's residence and give it to the police. On the morning of 10 July 1992, Mr. Belton introduced Detective Phelps and Detective Southern to Mr. Nelson Dowd, who normally collected the trash from 5350 Sunrise Terrace. Detective Phelps told Mr. Dowd that they were police offi-

STATE v. HAUSER

[115 N.C. App. 431 (1994)]

cers conducting an investigation. He asked Mr. Dowd to keep the trash from that residence separate from the other trash he collected and to give it to them and Mr. Dowd agreed. Trash at that residence was placed for collection in a roll-out garbage cart on a grassy area adjacent to the house. It was customary for Mr. Dowd to walk onto the premises, take the roll-out cart off of the grassy area and out to the street, dump its contents into his garbage truck, and leave the empty cart at the end of the driveway. If additional garbage bags had been placed for collection, Mr. Dowd would place them in his own cart and roll both carts out to the truck. On 10 July 1992, a roll-out cart and two garbage bags had been placed for collection. Mr. Dowd took an empty cart from his truck and rolled it up to the house. He put the two garbage bags in his cart and rolled it out to the street along with defendant's cart. Instead of depositing the contents of defendant's cart into the garbage truck's collection bin, he deposited them into his own cart, along with the two bags. He left defendant's empty cart on the sidewalk at the end of the driveway as usual. He then drove the truck to the next corner, where he gave the cart containing defendant's garbage to the officers. He requested that they return the cart to the city yard when they finished with it. The officers found material containing cocaine residue inside one of the two plastic trash bags. This evidence was used as a basis for the search warrant which led to the confiscation of the cocaine and defendant's arrest.

Defendant argues that the search and seizure of his garbage was unreasonable, in violation of the Fourth Amendment. The United States Supreme Court's test for reasonableness is whether the defendant had a subjective expectation of privacy that society accepts as objectively reasonable. *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30 (1988); *Maine v. Thornton*, 466 U.S. 170, 80 L. Ed. 2d 214 (1984); *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring). The Supreme Court addressed the expectation of privacy in garbage in *California v. Greenwood*. In *Greenwood*, a police officer was conducting surveillance of defendants' home in Laguna Beach, California. *Greenwood*, 486 U.S. at 37, 100 L. Ed. 2d at 35. The officer asked the neighborhood's regular trash collector to collect the defendants' garbage bags and turn them over to her without mixing their contents with garbage from other houses. The trash collector collected the plastic garbage bags defendants had left on the curb in front of their house and turned them over to the police. *Id.* at 37, 100 L. Ed. 2d at 35. The Supreme

Court held that this activity did not violate the Fourth Amendment because society does not accept the defendants' expectation of privacy in the garbage as objectively reasonable. *Id.* at 40, 100 L. Ed. 2d at 36.

Before *Greenwood*, the "expectation of privacy" test had not generally been used by the federal circuit courts in garbage search cases. Instead, these courts had used a property abandonment theory to conclude that the Fourth Amendment does not protect garbage because it has been abandoned. *See United States v. Crowell,* 586 F.2d 1020, 1025 (4th Cir. 1978), *cert. denied,* 440 U.S. 959, 59 L. Ed. 2d 772 (1979) ("The act of placing [garbage] for collection is an act of abandonment"). *See also United States v. Dela Espriella,* 781 F.2d 1432 (9th Cir. 1986); *United States v. O'Bryant,* 775 F.2d 1528 (11th Cir. 1985); *United States v. Kramer,* 711 F.2d 789 (7th Cir.), *cert. denied,* 464 U.S. 962, 78 L. Ed. 2d 339 (1983); *United States v. Terry,* 702 F.2d 299 (2d Cir.), *cert. denied sub nom. Williams v. United States,* 461 U.S. 931, 77 L. Ed. 2d 304 (1983); *United States v. Reicherter,* 647 F.2d 397 (3d Cir. 1981); *United States v. Vahalik,* 606 F.2d 99 (5th Cir. 1979) (per curiam), *cert. denied,* 444 U.S. 1081, 62 L. Ed. 2d 765 (1980); *Magda v. Benson,* 536 F.2d 111 (6th Cir. 1976) (per curiam); *United States v. Mustone,* 469 F.2d 970 (1st Cir. 1972).

*Greenwood* makes clear that the proper inquiry is not whether an individual abandoned his property but whether he exhibited an objectively reasonable expectation of privacy in the property. "The Court properly rejects the State's attempt to distinguish trash searches from other searches on the theory that trash is abandoned and therefore not entitled to an expectation of privacy." *Greenwood,* 486 U.S. at 51, 100 L. Ed. 2d. at 44 (Brennan, J., dissenting).

In *Greenwood*, the Court found that the defendants did not have an objectively reasonable expectation of privacy in their garbage because they left it exposed and accessible to the public:

> [R]espondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having

STATE v. HAUSER

[115 N.C. App. 431 (1994)]

deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Greenwood*, 486 U.S. at 40-41, 100 L. Ed. 2d at 36-7 (citations omitted) (footnotes omitted).

Although this discussion of the defendants' objective expectation of privacy mentions their intent to convey the trash to a third party, we note that the Court's grounds for finding no expectation of privacy was the accessibility of the garbage, not the defendants' intent to convey it to a third party. *See United States v. Hedrick*, 922 F.2d 396, 400 (7th Cir.), *cert. denied,* —— U.S. ——, 116 L. Ed. 2d 113 (1991). ("[T]he Court has never held that the intent to convey an object or conversation to a third-party renders any expectations of privacy unreasonable simply because the third-party could then convey the object or information to the police."). We echo this distinction. Fourth Amendment protections would be severely curtailed if the expectation of privacy hinged on whether there was an intention to transfer the object to a third party.

In *Greenwood*, garbage had been placed at the curb, and the holding was explicitly limited to the expectation of privacy "outside the curtilage of a home." *Greenwood*, 486 U.S. at 37, 100 L. Ed. 2d at 34. In the case *sub judice*, however, defendant's garbage had been placed within the curtilage of his home. Curtilage has been defined as "the area around the home to which the activity of home life extends." *Maine v. Thornton*, 466 U.S. 170, 182, 80 L. Ed. 2d 214, 226, n. 12 (1984). The curtilage is an area that has always received special constitutional protection. "At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' and therefore has been considered part of the home itself for Fourth Amendment purposes." *Id.* at 180, 80 L. Ed. 2d at 225 (citation omitted). The Supreme Court has recognized the curtilage of a private house as "a place where the occupants have a reasonable and legitimate expectation of privacy that society is prepared to accept." *Dow Chemical Co. v. United States*, 476 U.S. 227, 235, 90 L. Ed. 2d 226, 235 (1986).

Defendant's garbage was placed behind his house, adjacent to the house itself, in an area that is barely visible from the road. It was contained in secured garbage bags and a roll-out cart with a closed lid.

We hold that defendant's garbage was not exposed to public access such that his objective expectation of privacy in the garbage was destroyed.

The next step in our analysis is to determine whether the garbage collector was acting as an agent of the police. The Fourth Amendment protects citizens from unreasonable searches and seizures carried out by the government. However, it has long been recognized that a truly private search and seizure is not regulated by or subject to the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 80 L. Ed. 2d 85 (1984). Where a search is conducted by a private citizen, but only after the government's initiation and under their guidance, it is in reality a search by the sovereign, and is subject to the Fourth Amendment. *State v. Keadle*, 51 N.C. App. 660, 277 S.E.2d 456 (1981). We look to the facts of this case to determine whether Mr. Dowd was acting as an agent of the police.

The Winston-Salem Police Department, through two of its officers, solicited the help of the city garbage collector, Mr. Dowd. Several days before the actual search and seizure of defendant's garbage, Detective Phelps contacted Mr. Marion Belton, a supervisor in the Sanitation Department of the City of Winston-Salem. Detective Phelps told Mr. Belton that he wanted one of Mr. Belton's employees to assist him in an investigation; specifically, he wanted one of Mr. Belton's employees to collect the trash from 5350 Sunrise Terrace and then turn it over to the police. On the day of the search and seizure, one of Mr. Belton's garbage collectors, Mr. Dowd, was picked up in a car by Mr. Belton and transported a mile off his regular route to talk with the police. Detective Phelps instructed Mr. Dowd to seize trash from defendant's residence, keep the trash separate, and then turn the trash over to the police. Mr. Dowd agreed to participate and complied with these instructions. He went onto defendant's property, put defendant's trash in a separate container, and transferred it to the detectives.

If the government coerces, dominates, or directs the action of a private person, a resulting search and seizure may violate the guarantees of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120 (1971). The North Carolina Supreme Court has recognized that the Fourth Amendment applies when a private party conducts a search while acting as an instrument or agent of the State. *State v. Sanders*, 327 N.C. 319, 395 S.E.2d 412 (1990), *cert. denied*, 498 U.S. 1051, 112

L. Ed. 2d 782 (1991). In determining whether the Fourth Amendment applies to a search involving a private person, all the facts and circumstances must be considered. *Id.* at 334, 395 S.E.2d at 422; *Coolidge*, 403 U.S. at 489, 29 L. Ed. 2d at 596. Factors to be considered in this inquiry include the citizen's motivation for the search and seizure; the degree of governmental involvement, such as advice, encouragement, or knowledge about the nature of the citizen's activities; and the legality of the conduct encouraged by the police. *Sanders*, 327 N.C. at 334, 395 S.E.2d at 422. The application of these factors to the instant case clearly establish an agency relationship between the police and Mr. Dowd.

Mr. Dowd had the authority to remove defendant's property and he would have collected the trash regardless of police involvement. However, it was the manner in which he kept the trash separate and turned it over to the police that is at issue. Mr. Dowd stated that if he had not received contrary instructions from Detective Phelps, he would have "dumped [the trash] in my truck and went right on."

This search had substantial governmental involvement. The police initiated all contact with the Sanitation Department. The police arranged to have Mr. Dowd pulled a mile off his route. The police met with Mr. Dowd and informed him that they wanted defendant's trash seized and kept separate. They observed Mr. Dowd seizing the trash and then met him and collected the items that had been seized. Mr. Dowd's actions were both orchestrated and observed by the police officers.

We conclude that Mr. Dowd acted as an agent of the police. Therefore, this search and seizure is regulated by the Fourth Amendment. Given the defendant's expectation of privacy already discussed, we find that the search and seizure was unconstitutional.

Finally, we must determine whether the warrant would have been validly issued absent the unconstitutional search and seizure. If the warrant demonstrated probable cause through legally-obtained information, the illegal search and seizure would be harmless error. The standard for a court reviewing the sufficiency of probable cause for a search warrant is "whether there is substantial evidence in the record supporting the . . . decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728, 80 L. Ed. 2d 721, 724 (1984). Under *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983), the issuing judicial official is called upon to consider the "totality of the circumstances." *Gates*, 462 U.S. at 230, 76

L. Ed. 2d at 543. North Carolina has adopted the *Gates* "totality of the circumstances" approach for reviewing a determination of the existence of probable cause. *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984). "Under this test the question is whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." *State v. Beam*, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989).

In addition to the evidence seized from defendant's residence, the affidavit supporting the search warrant summarizes information received from four informants. One of the informants stated that defendant had sold him cocaine at defendant's residence. A statement against penal interest carries its own indicia of credibility sufficient to support a finding of probable cause to search. *Beam*, 325 N.C. at 221, 381 S.E.2d at 330. In addition, Detective Phelps stated in the affidavit for the search warrant that the four informants had never given false or misleading information and that several of the informants had provided information which had led to arrests in the past. The fact that statements from an informant had led to arrests in the past is sufficient to show the reliability of the information. *Arrington*, 311 N.C. at 642, 319 S.E.2d at 260. We therefore conclude that the information supplied by the informants, separate and apart from the illegal search of defendant's garbage, provides a substantial basis for probable cause necessary to support a search warrant. The trial court properly denied defendant's motion to suppress, and we therefore find

No error.

Judges WELLS concurs.

Judge ORR concurs in the result only.